## S10A1598. WALLER et al. v. GOLDEN et al.

(706 SE2d 403)

MELTON, Justice.

Craig and Jena Golden's neighbors, the Wallers,[1] appeal from a Superior Court of Henry County order denying their request for an injunction to force the Goldens to remove a swimming pool that the Goldens had constructed in the side yard of their own property. For the reasons that follow, we affirm.

The record reveals that the Goldens reside in the Eagles Landing Country Club community ("Eagles Landing") in McDonough, Georgia. Eagles Landing is governed by restrictive covenants, one of which limits the construction of swimming pools to areas behind residential units. Prior to August 2009, the Goldens submitted a proposal to the Architectural Review Board (ARB) of the Eagles Landing Homeowners Association (HOA) to build a swimming pool in their side yard. Although the proposed plan was not in compliance with the Eagles Landing restrictive covenants, it was approved on August 7, 2009, because neither the Goldens nor the ARB was aware of the restriction. The Goldens signed a contract with a builder for the construction of the pool and made a $1,975 payment upon the execution of the contract. The construction was projected to be completed in 60 days at a cost of $39,500.

On August 11, construction equipment arrived at the Goldens' property. At this time, at least one of the neighbors involved in the current appeal knew that a pool was to be constructed. On August 16, one neighbor voiced her objection to the pool's location to the Goldens, saying, "Oh my gosh, you can't do that." After other concerned neighbors began to realize a pool in a side yard was being built, they started lodging complaints with the HOA. On August 20, the Goldens made a $2,089 payment on pool construction-related expenses.

On August 21, the HOA held a meeting regarding how to address

---

[1] The neighbors involved in this appeal include: William Waller, Peggy Waller, Michelle B. Deraney, Christian Baldwin, Kevin Johnson, Julie Johnson, William Sutton, Janey Sutton, James Atkinson, Ola Atkinson, Noreen Walker, Calvin Walker, Michael Roberts, Deana Roberts, Gene Babb, Nikki Babb, and Leandro Toletino. For ease of reference, these neighbors shall hereinafter be collectively referred to as "the Wallers."

the situation. Following the meeting, HOA members informed the Goldens of their neighbors' discontent and the pool's noncompliance with community restrictions. However, the HOA decided to allow the construction to continue because they feared a lawsuit if they told the Goldens to stop construction after the ARB had given prior approval. In fact, the HOA decided that the construction process should be expedited in order to minimize the negative impact of the pool's construction on the community aesthetic and informed all parties to this litigation of the same. In furtherance of the goal to minimize the impact of the pool construction on the community aesthetic, the HOA decided to use association funds up to $4,000 to help the Goldens purchase matured shrubbery that would hide the pool from view from the street.

On August 25, the Goldens made a $15,800 progress payment on the pool. Some of the Goldens' neighbors attempted to resolve the matter outside of the HOA by holding a meeting with their attorney on August 24 and by privately consulting with the Goldens on August 30. Ultimately, however, the Wallers sent a letter on August 31 demanding that construction on the pool halt and filed a lawsuit on September 3. The Goldens were served with the lawsuit the following day. In the suit, the Wallers sought (i) an injunction against further construction of the pool, (ii) a mandatory injunction compelling the Goldens to remove the pool and return their property to its original state, (iii) attorney fees, and (iv) damages for injury to property values and misappropriation of HOA funds.[2]

The Goldens continued construction on the pool, including paying $8,022 to a landscaper on September 4 and pouring concrete for a patio area to restore the normal ingress and egress route to their home. On September 8, the trial court initially denied the Wallers' request for a temporary injunction, but on September 18, the trial court reversed its earlier decision and issued a temporary injunction preventing the Goldens from proceeding further on the pool construction.

On December 17, the trial court entered a final judgment removing the temporary injunction and denying the Wallers' claims. The court reasoned that, although the pool's location violated the Eagles Landing covenants, the doctrine of laches prevented the grant

---

[2] The claim for misappropriation of funds was asserted only against HOA Board members Ron Pruett, Clyde Harrison, Mike Cavin, Sandy Baker, and Alvin Brown (collectively, the "Board Member Appellees") – rather than the Goldens. The Wallers alleged that the Board Member Appellees misused funds by electing to spend association money to help purchase natural barriers to conceal the Goldens' pool in violation of an Eagles Landing restrictive covenant requiring the owner of the property to bear the expense of installing ARB required barriers.

of a permanent injunction because the harm that would be suffered by the Goldens through granting an injunction outweighed the speculative harm suffered by the Wallers. The claims against the Board Member Appellees were denied because the Wallers did not demonstrate that the Board was prohibited from using funds to benefit a particular association member when the association as a whole benefitted from the expenditure as well. Here, the common benefit was protecting the community aesthetic.

Following the decision, the Wallers failed to seek supersedeas. Thus, when the temporary injunction was removed on December 19, 2009, the Goldens continued construction of the pool and completed the project shortly thereafter. On January 15, 2010, the Wallers timely filed a notice of appeal with the Court of Appeals of Georgia, which then transferred the appeal to this Court.[3]

1. The Wallers contend that the trial court erred in concluding that their action for an injunction to remove the Goldens' pool was barred by laches. "[T]he question of laches is addressed to the sound discretion of the trial court, and on appeal the exercise of that discretion will not be disturbed unless it is so clearly wrong as to amount to an abuse of discretion." (Citations and punctuation omitted.) *McClure v. Davidson*, 258 Ga. 706, 708 (373 SE2d 617) (1988). The trial court

> may bar a complaint based on laches when the lapse of time and the claimant's neglect in asserting rights results in prejudice to the adverse party. Whether laches should apply depends on a consideration of the particular circumstances, including such factors as the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for the delay, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the claimant or the adverse party possessed the property during the delay. . . . [L]aches is not merely a question of time, but principally the question of the inequity in permitting the claim to be enforced.

(Citations omitted.) *Hall v. Trubey*, 269 Ga. 197, 199 (1) (498 SE2d

---

[3] We note that the Goldens' motion to dismiss the Wallers' appeal as moot now that the pool construction is finished is without merit. Indeed, if the Wallers are correct in their claim that they were entitled to a permanent injunction restricting the construction of the Goldens' pool in the first place, the Goldens would have to remove the pool in question, as the Goldens are the ones responsible for having placed themselves in the position of installing the pool "at the risk of having to remove it later." *Radio Webs, Inc. v. Tele-Media Corp.*, 249 Ga. 598, 603 (2) (292 SE2d 712) (1982). We therefore deny the Goldens' motion to dismiss and will address the present appeal on the merits.

258) (1998). Courts should "consider all the facts presented" when balancing the equities to determine which party's rights are superior. *Cantrell v. Henry County*, 250 Ga. 822, 826 (2) (301 SE2d 870) (1983).

The Wallers contend that the trial court failed to give proper weight to their August 16 verbal objection to the construction of the Goldens' pool, as this objection, lodged only a few days after construction on the pool began, indicates that they did not engage in any unreasonable delay in the assertion of their rights. However, "[a] mere objection or protest, or a mere threat to take legal proceedings, is not sufficient to exclude the consequences of laches or acquiescence." (Citation and punctuation omitted.) *Holt v. Parsons*, 118 Ga. 895, 899 (45 SE 690) (1903). In any event, the trial court was not required to give more weight to the Wallers' verbal objection than to any of the other facts that the trial court was also required to consider in reaching its conclusion regarding the proper equitable outcome between the parties. See, e.g., *Cantrell*, supra, 250 Ga. at 826 (2). Indeed, the trial court did consider the Wallers' verbal objections when weighing the equities, finding that the Wallers' verbal objections were entitled to "little weight" in relation to other factors, including the Wallers' delay in actually *filing* suit, the Wallers' speculative damages, and the significant financial loss that would be suffered by the Goldens if an injunction were granted. The trial court did not abuse its discretion in this regard.

Moreover, the cases cited by the Wallers in which laches was found to be inapplicable are distinguishable from the present case. See *Hech v. Summit Oaks Owners Assn.*, 275 Ga. App. 265 (620 SE2d 490) (2005); *King v. Baker*, 214 Ga. App. 229 (447 SE2d 129) (1995). In both *Hech* and *King*, the defendant involved in the disputed activity *did not have permission* from the relevant authorities to engage in the activity in question. Here, the Goldens received the express permission of the ARB to build their pool and were twice reassured by the HOA to continue the construction after the HOA heard and addressed the Wallers' complaints. Further, at least one of the Wallers knew on August 11 that a pool was to be built at the proposed location, and following the first HOA meeting on August 21, the Wallers were well aware that the HOA decided to allow the Goldens to proceed with construction and also encouraged the Goldens to expedite the process. Despite everything that the Wallers knew, they nevertheless did not actually file a lawsuit and serve the Goldens until 24 days after having received notice that the pool was being constructed. By this time, the Goldens were nearly halfway into a project that was estimated to take only 60 days to complete, had expended over $20,000 on pool construction and related landscaping, and were committed to paying the remaining balance on their contract. Under these circumstances, the trial court did not

abuse its discretion in concluding that the Wallers' lawsuit was barred by laches. Indeed,

> [p]arties with knowledge that a [structure] may be constructed [with the express permission of the relevant authorities involved, even where the rule upon which such permission was granted may be invalid], must be diligent and act promptly to protect their rights. Where, as in this case, the parties delayed bringing their *action* until such time as the defendant had expended large sums for materials and labor, and the [construction] had progressed substantially according to the plan thereof, the plaintiffs are estopped by their acquiescence, or failure to proceed promptly.

(Citation and punctuation omitted; emphasis supplied.) *Black v. Barnes*, 215 Ga. 827, 829 (1) (114 SE2d 38) (1960). Compare *Hall*, supra, 269 Ga. at 199 (1) (despite issuance of building permits, where defendant had not received zoning variance to construct residential units on property zoned strictly for commercial use, plaintiff's action for injunction was not barred by laches even though formal lawsuit was not filed until several months after construction project began).[4]

2. The trial court was also correct to deny the Wallers' claims against the Board Member Appellees.

> Where, as here, the [covenants] delegate[ ] decision-making authority to a [Home Owners Association] and that group acts, the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious.

*Saunders v. Thorn Woode Partnership, L.P.*, 265 Ga. 703, 704 (2) (462 SE2d 135) (1995). There is no evidence here that the Board Member Appellees were not acting in good faith when they authorized the expenditure of association funds in pursuit of the reasonable goal of protecting the community aesthetic. Nor is there any evidence that the HOA's actions were procedurally unfair. The Wallers' claims against the Board Member Appellees are therefore without merit. Id.

*Judgment affirmed. All the Justices concur.*

---

[4] Because the trial court did not err in concluding that the Wallers' claim for injunctive relief was barred by laches, the trial court also did not err in denying the Wallers' claim for attorney fees. See *Steele v. Russell*, 262 Ga. 651 (2) (424 SE2d 272) (1993).

DECIDED FEBRUARY 28, 2011.

*Burr & Forman, Brad A. Baldwin*, for appellants.

*Weinstock & Scavo, Marvin P. Pastel II, Smith, Welch & Brittain, John P. Webb, Andrew J. Gebhardt, Carlock, Copeland & Stair, Dennis G. Lovell, Jr., Stanley W. Schoolcraft III*, for appellees.